## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**CASE NO.** _____

**YOUNG HEUP SONG,**

　　　Plaintiff,

v.

**SCOTT FISH**, individually and as Manager;
**JORDAN FISH**, as agent and principal;
**UP DEVELOPMENT COMPANY, LLC**, a
Florida Limited Liability Company; and
**UP CLERMONT HILLS INVESTOR, LLC**, a
Florida Limited Liability Company,

　　　Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiff **Young "Jeff" Heup Song** ("Plaintiff" or "Mr. Song"), by and through his undersigned counsel, hereby sues Defendant **Scott Fish**, individually, and as the Manager of Defendant Entities ("Defendant Fish"); **Jordan Fish**, as agent of Defendant Entities ("Defendant J. Fish"); Defendant **Up Development Company, LLC**, a Florida Limited Liability Company ("Up Development"); and **Up Clermont Hills Investor, LLC**, a Florida Limited Liability Company ("Up Investor") (Up Development and UP Investor are collectively referred to as "Defendant Entities") (Defendant Fish, Defendant J. Fish, and Defendant Entities are collectively referred to herein as "Defendants"), seeking rescission and/or

1

other damages, prejudgment interest, and his attorneys' fees and costs associated with Defendants' fraudulent sale of securities and/or theft of Plaintiff's $1 million.

## PRELIMINARY STATEMENT

1.     In 2021 Defendant Fish and his son, Jordan Fish, preyed on Plaintiff, a Korean gentlemen, inducing Mr. Song to invest $1 million of his hard-earned savings in one of Defendant Fish's purported real estate ventures in Florida.

2.     Touting his successful real estate development business and lavish lifestyle (including private jet, mansion, luxurious cars, etc.), Defendant Fish purported to sell Mr. Song a minority interest in the Clermont Hills real estate development, through one of his investment companies, Defendant UP Investor.

3.     Defendant Fish professed to sell Mr. Song an investment, doing so through the false and misleading sale of securities in violation of the Federal securities laws (Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2)) and Florida's Securities and Investor Protection Act (Fla. Stat. Chapter 517, *et seq.*).

4.     Once Mr. Song wired his $1 million across state lines to a different entity owned by Defendant Fish – Defendant UP Development – and his money was in the possession of Defendants, the Defendants engaged in avoidance and purposeful lulling activities in response to Mr. Song's communications seeking basic information (a copy of the operating agreement, updated information, and of course required tax information).

5.     Although not readily apparent from the beginning, or even after Mr. Song made his investment, Defendants' subsequent actions and inactions now demonstrate that Defendants never considered Mr. Song to be an actual member of UP Investor, nor did they recognize him as an investor.

6.     If Defendants did consider Mr. Song to be a member and investor, they would have promptly provided Mr. Song with basic information and would not have unlawfully withheld required tax information from him.

7.     Using flash, distance, and false promises, Defendants collectively took financial advantage of an out-of-state, unsophisticated minority investor with the goal of permanently depriving Mr. Song of his hard-earned savings, simply to further Defendant Fish and his family's extravagant lifestyle.

8.     Based upon Defendants' individual and collective unlawful and illegal conduct, which includes securities fraud and civil theft, Mr. Song seeks this Court's assistance to finally get Defendants' full-attention and obtain rescission, monetary damages, and/or related statutory relief, including legal interest and attorneys' fees and costs.

## PARTIES

9.     Plaintiff Y**oung "Jeff" Heup Song** ("Plaintiff" or "Mr. Song") is above the age of 18, resides in and is a citizen of Duluth, Georgia, and is otherwise *sui juris*.

10.     Defendant **Scott Fish** ("Defendant Fish") resides in Florida at 22051 O'Brien Road, Howey-in-the-Hills, Florida 34737, and also resides at 1045 Tulloss Road, Franklin, Tennessee 37067. His business address is 3122 E. Amelia Street, Suite A, Orlando, Florida. He also owns and manages a laundry list of Florida and Tennessee entities sharing the "UP" brand, using them as an alter ego, and holding himself out to the public as follows:

### A LEADING DEVELOPER OF RETAIL AND ENTERTAINMENT

**Scott Fish Developer**
Scott Fish owns and serves as the principal of UP Development, a leading developer of retail and entertainment centers. His firm maintains two offices, in Franklin, Tennessee, and Orlando, Florida, and operates primarily in the southeastern United States. In this region, Scott Fish has guided the company in constructing shopping centers that feature a variety of well-known retailers, including Home Depot, Starbucks, Macy's, and Target.

**Scott Fish Up Development**
An accomplished real estate development and construction professional with a specific focus in the retail shopping center sector, Scott Fish serves as principal with UP Development, through which he manages a range of development and workout projects. In business for more than 17 years, this Franklin, Tennessee-based firm operates throughout the southern United States. Mr. Fish's responsibilities with UP include designing, permitting, and developing shopping centers that feature major national chains as anchor stores. These anchor stores range from general merchandise big-box retailers, such as Wal-Mart and Target, to large grocery stores, such as Kroger and Publix.

Although they complete a wide range of real estate projects, Mr. Fish and his firm prefer to renovate and rebuild existing buildings and infrastructure rather than constructing these elements from the ground up. Key projects include the redevelopment of the 1.3-million-

square-foot Orlando Fashion Square Mall and the 275,000-square-foot Cypress Trace Shopping Center in Fort Myers, Florida.

*See* https://scottfishdeveloper.com (last accessed on June 19, 2023).

11.    Defendant Fish's Florida residence (located at 22051 O'Brien Road, Howey-in-the-Hills, Florida 34737) was purchased in September 15, 2013, and is titled to Up Fieldgate US Investments – Bradshaw II, LLC, a Florida limited liability company created September 13, 2013 and for which Scott Fish has been the only Registered Manager since creation. His address in that corporate registration is 1045 Tulloss Road, Franklin, Tennessee 37067 and its mailing address is 3122 E. Amelia Street, Suite A, Orlando, FL 32803. A title search found a variety of expensive utility, sport, and antique cars and motorcycles registered to Defendant Fish at his Florida address.

12.    Defendant Fish's Tennessee residence (located at 1045 Tulloss Road, Franklin, Tennessee 37067) is titled to both Scott Fish and Linda Fish, and is also the registered address of Up Development of Tennessee, LLC, for which Defendant Scott Fish is the Registered Agent and Manager since April 21, 2008.

13.    Defendant **Jordan Fish** ("Defendant J. Fish") is Defendant Fish's adult son, who is over the age of 18, resides in both Florida and Tennessee, is a principal of Defendant Up Development and agent of Defendants, and is otherwise *sui juris*.

14.    Defendant **UP Clermont Hills Investor, LLC**, a Florida Limited Liability Company ("UP Investor"), is an active company registered with the

Florida Department of State, Division of Corporations since February 19, 2016. Defendant Fish is the registered manager of Defendant UP Investor. Its principal address is 1045 Tulloss Road, Franklin, Tennessee 37067 and its mailing address is 3122 E. Amelia Street, Suite A, Orlando, FL 32803.  Mr. Song purportedly invested in Defendant UP Investor, purchasing a 7% interest from Defendant Fish.

15.    Defendant **UP Development Company, LLC**, a Florida Limited Liability Company ("UP Development"), is an active company registered with the Florida Department of State, Division of Corporations since May 22, 2013. Defendant Fish is the registered manager of UP Development Company. Its principal address is 1045 Tulloss Road, Franklin, Tennessee 37067 and its mailing address is 3122 E. Amelia Street, Suite A, Orlando, FL 32803. Defendant J. Fish directed Mr. Song to wire $1 million to UP Development, which he did intending to invest in Defendant UP Investor, purportedly purchasing his interest from Defendant Fish.

<u>**JURISDICTION AND VENUE**</u>

16.    This Court has personal jurisdiction over the Defendant Entities, UP Investor and UP Development, because they are Florida limited liability companies with real estate investments, registered agents, mailing addresses, and a Manager and other agents and/or principals located in and engaging in business in Florida.

6

17.    This Court has personal jurisdiction over Defendant Fish because he resides in and regularly conducts business in Florida, both individually and as Defendant Entities' Manager.

18.    This Court has personal jurisdiction over Defendant J. Fish because he resides in and regularly conducts business in Florida, individually and as a Principal of Defendant UP Development and agent of the Defendants.

19.    This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 77v, based on Defendants' violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2).

20.    This Court also has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, Plaintiff is a citizen of Georgia; Defendant Fish and J. Fish reside in or are citizens of both Tennessee and/or Florida; the Defendant Entities and the investment property at issue are Florida entities; and, upon information and belief, Defendant Entities do not recognize any members that are domiciled in and thus citizens of Georgia.

21.    Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because all Defendants reside or regularly conduct business in this District; a substantial part of the events giving rise to the claims occurred in this District; the

misappropriated $1 million investment was to be used to develop the Clermont real estate development located in this District; and the investment properties that are the subject of this Complaint are located in Lake County, Florida, within this District.

## FACTUAL BACKGROUND

### Father and Son's Solicitation and Purported Sale of Investment

22.     Defendant Fish met Mr. Song through a mutual friend, Michael "Mike" Cho, while Mr. Song was visiting with his lifelong friend in Tennessee.

23.     Defendant Fish encouraged both Mr. Song and Mike to invest in his commercial and residential property development in Clermont, Florida.

24.     When Mr. Song showed interest in the proposal, both Defendant Fish and Jordon Fish, his son, took steps to close the "sale", flying Mr. Song and Mike to Florida in Defendant Fish's private plane to view a real estate development site.

25.     The Fishes also took Mr. Song to Defendant Fish's over-100 acre home in Florida and his mansion in Tennessee (where he showed off his its bowling alley and large collection of expensive sports cars, SUVs, and antique cars).

26.     Once in Florida, the group visited the Clermont, Florida  property site and Mr. Song spoke to the project manager, Eli.

27.     Defendant Fish told Mr. Song that the property was in the process of being cleared for a residential and commercial development in which Mr. Song

could invest $1 million in return for 7% of the profits from the project, which was to include 144 homes and 5 retail ventures.

28.     While in Florida, Defendant Fish and Defendant J. Fish showed Mr. Song the land, proposed building locations, proposed building plans, Defendant Fish's office, introduced to the project manager, and was taken to Defendant Fish's Florida home located on an approximate 60 acre property.

29.     The Fishes convinced Mr. Song that they were highly successful real estate developers who were allowing Mr. Song and his friend an opportunity to share in their profits in return for his substantial investment.

30.     Defendant J. Fish, a principal of Defendant Up and agent of the Defendants, gave Mr. Song wire instructions directing Mr. Song to send $1 million to Defendant UP Development Company as part of the unlawful sale of securities.

31.     Defendants never provided Mr. Song with an investment prospectus, private placement memorandum, financial statements, or any other written investment risk disclosure or safe harbor provisions prior to Defendants' sale of the investment or security.

32.     Defendants never advised Plaintiff if the investment was a registered or an exempt security in compliance with the requirements of state and Federal securities laws, nor did they provide any form of written documentation to permit the sale of securities as part of an interstate transaction.

33.     Defendants also failed to obtain information from Mr. Song to determine whether he was an accredited investor, as defined by the securities laws, who should be investing $1 million in the Defendants' investment.

34.     Despite the foregoing, Defendants sold the investment or securities to a foreign resident, over state lines, in violate state and Federal Securities laws.

### Defendants Took Advantage of Mr. Song

35.     On June 14, 2021, based on Defendant Fish's representations, and in furtherance of the wire information provided by Defendant J. Fish, Mr. Song wired $1,000,000 to UP Development Company through two interstate wire transfers, a $600,000 wire transfer on June 14, 2021, and a $400,000 wire transfer on June 17, 2021. True and correct copies of the (redacted) Application for Wire Transfer are attached as **Composite Exhibit 1**.

36.     Mr. Song understood from Defendants that his money would be used for "groundwork" associated with the Clermont, Florida real estate development.

37.     On June 22, 2021, after Defendants received Mr. Song's wire transfers totaling $1 million, Defendant Fish executed a document titled, "Up Clermont Hills Investor, LLC Membership Interest Transfer Agreement" as "Transferor" and "Owner" of UP Clermont Hills Investor, and Mr. Song, as "Transferee" (the "Agreement").

38.     The Agreement included an Exhibit A titled, "Assignment of Interests," which Mr. Song and Defendant Fish also executed and dated that same day.

39.     True and correct copies of the Agreement and Exhibit A (collectively referred to as the "Agreement") are attached as **Composite Exhibit 2**.

40.     The Assignment of Interests expressly set forth Mr. Song's interests in Defendant UP Investment, including but not limited to:

a.     Seven Percent (7%) of [Assignor, Defendant Fish's] right, title and interest, of any kind or nature, in the assets, capital, profits, losses, gains, credits, deductions and other allocations, cash flow, and other distributions (ordinary and extraordinary) in respect of all periods on and after [June 22, 2021]; and

b.     Seven percent (7%) of voting, control and management rights, of any kind or nature, under any operating agreement or agreements of UP Clermont Hills Investor, LLC, with respect to [Defendant Fish's] membership interests (collectively, the "**Assigned Units**").

41.     Section 4(a) of the Agreement states, "Company represents that it is duly organized, validly existing and in good standing under the laws of the State of Florida and has all requisite power and authority to carry on its business as it is

now being conducted, and to own its properties and assets, including those assets set forth on **Exhibit B**." (Bold and underline in original).

42.    Despite the foregoing language and Mr. Song paying Defendants $1 million, the Agreement did not include an Exhibit B and Defendants never provided Mr. Song with a copy of the list of assets he was purportedly sold an in interest in – at  that time or any other time – despite his inquiries and requests for information.

43.    In exchange for $1,000,000, Defendant Fish purportedly transferred 7% of his ownership interest in UP Investor to Mr. Song.

44.    Based on his conversations with Defendants and their oral representations to him, Mr. Song understood that that UP Investor intended, through Defendants, to construct 144 homes and five retail stores on the property that Defendants showed Mr. Song during the Florida investor trip.   Thus, Defendants made Mr. Song believe that his 7% ownership interest in UP Investor would result in profitable financial returns from the construction and ultimate sale of those properties.

45.    Paragraph 17 of the Agreement addresses Further Assurances and expressly states:

> At and after Closing, the parties hereto shall execute and deliver such additional documents and take such additional actions as may be necessary  or  advisable  in  order  to  consummate  the  transactions

contemplated by this Agreement and vest more fully in the Transferee the complete and unrestricted ownership of the Transferor Interests.

*See* **Composite Exhibit 2**.

46.    Despite the terms of the Agreement, the representations by the Defendants, and the requirements under state and Federal law, Defendants completely neglected to send Mr. Song complete documentation or any substantive information.

47.    Defendants already had Mr. Song's money and were done with him – only he did not know it.

### Defendants' Evasive and Lulling Activities

48.    Despite the express provision of Paragraph 17, Defendants never provided Mr. Song with Exhibit B to the Agreement, a copy of Defendant Up Investor's Operating Agreement, any corporate or financial information, or any required and necessary state and Federal tax reporting information, despite Mr. Song's attempted follow-up.

49.    Defendants' actions and inactions evidence their complete disregard of the terms of the Agreement and the notion that Mr. SonYOUNG g received "complete and unrestricted ownership of the Transferor Interests" as provided by Section 17 and the general terms of the Agreement.

50.     The investment purportedly sold by Defendants falls under the definition of a security, whereby he invested money in a common enterprise with the expectation of profits to be derived solely from the efforts of others.

51.     There are at least three investors in this development project, including Mr. Song, his friend Mr. Cho, and Mr. Fish, if not more.

52.     Mr. Song expected to be kept informed about his investment, that he would receive and review information, and possibly vote in matters related to project development, without being required to personally do any of the physical labor developing the residential and commercial project.

53.     Mr. Song periodically contacted Defendants and attempted to get information and responses from Defendants. He also contacted his friend about this situation, which put a serious strain on his longstanding relationship.

54.     Defendants initially acknowledged Mr. Song's overtures, engaging in lulling activity designed to cause Mr. Song to believe that all was well and that he would receive information and anticipated money in due course.

55.     However, after wiring the $1 million investment to Defendants, they failed to provide Mr. Song with corporate documentation, financial information, notices, updates, substantive information, dividends, distributions, return of principal, or any interest payments.

**Mr. Song Requests His Money Back and Is Ignored**

56.     Frustrated with Defendants' lack of follow-through, Mr. Song sent a

demand letter on April 6, 2022, which stated:

> Good evening, Mr. Jordan Fish,
>
> I hope you have been well.
>
> It has been about 10 months since I signed onto the Clermont Project and provided my portion of the funding.  As a partner of the project, I've requested to receive a copy of the Operation Agreement.  I've contacted Mr. Cho directly multiple times, and he has informed me that I should have received a copy from Mr. Scott Fish, but I have not received any communication from him regarding the Operation Agreement.
>
> Frankly, the lack of paperwork and communication regarding this project have strained my relationship with Mr. Cho. I've discussed this with Mr. Cho, as well, but I am requesting that you return my initial investment back to me with no other compensation. Personally, making profit from this business endeavor it is not wroth straining my 40-year relationship with Mr. Cho.  I'm sure you can understand this sentiment, as well.
>
> At this point in time, due to the lack of essential business documents, I would like to go ahead and request that you return my initial investment back to me by the end of this month, April 2022.  I would like to resolve this amicably and without any legal intervention. Please respond to this email within 10 business days with how you wish to proceed. I appreciate your time.
>
> Best regards,
> Young Jeff Song

57.    Following delivery of the Demand Letter, Mr. Song called and texted Fish, but Defendant Fish did not answer or respond to him and never returned Mr. Song's $1,000,000 as demanded.

58.    Following Mr. Song's investment, Mr. Song heard that Defendant Fish purchased a used Rolls Royce, a ring for his wife valued at more than $100,000, and a condominium in Santa Monica, California.

59.    Mr. Song now he fears that his $1 million investment may have helped pay for these items.

60.    Mr. Song also subsequently learned, after-the-fact, that Defendants had repaid a portion of his friend's investment in August or September of 2022, and that litigation had subsequently ensued between his friend and Defendants.

61.    All of the foregoing, including Defendants' fraudulent concealment of their actions and inactions, present all the hallmarks of a complex securities fraud, Ponzi scheme, and/or such other unlawful and illegal activity, including rank theft orchestrated by Defendants, designed to maintain the lavish and opulent lifestyle that Defendant Fish and his family have grown accustomed to, apparently at the expense of investors like Mr. Song, his friend, and, upon information and belief, others.

62.    Mr. Song is out $1 million, is unsure if he actually owns an interest in a real estate project, and is unable to sell the investment in a secondary market.

63.     Accordingly, Defendants left Mr. Song with no choice but to hire his own counsel to investigate these matters, enforce his rights, and force Defendants to return his investment in its entirety, together with interest, costs, and attorneys' fees, pursuant to all applicable laws.

## COUNT I

### Violation of Section 12(a)(2) of the Securities Act of 1933
### (Rescission Pursuant to 15 U.S.C. § 77l(a)(2))

### (All Defendants)

64.     Plaintiff restates and reincorporates by reference the allegations of Paragraphs 1 through 63 as if fully set forth herein.

65.     Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2), authorizes a private cause of action for unlawful sales of securities in interstate commerce.

66.     Section 12(a)(2) provides the remedy of rescission, allowing a purchaser to recover the consideration paid for the security with interest thereon, less the amount of any income received, upon the tender of the security, or for damages if the buyer no longer owns the security.

67.     Section 12(a)(2) imposes joint and several liability on any person, whether an individual, a corporation, a partnership, an association, or related entity, who unlawfully sells or aids in the unlawful sale of securities.

68.    In connection with the sale of the investment at issue, Defendants individually and/or collectively, directly and/or indirectly, offered to sell a security using interstate commerce and oral communications that included untrue statements of material fact or which omitted to state a material facts necessary to make their statements, in light of the circumstances made, not misleading.

69.    Defendants obtained $1 million of Mr. Song's savings through two interstate wire transfers by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under where they were made, not misleading.

70.    Under the circumstances described in more detail above, Defendants had knowledge of and duty to disclose the following material facts in order to make their other statements not misleading, including but not limited to:

    a.    That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would not provide full and complete documentation to Plaintiff, whether called for by the Agreement or otherwise required by law;

    b.    That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would ignore Plaintiff's communications;

    c.    That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would fail to treat Mr. Song as a member of Up Investor;

    d.    That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would not share any profits with Plaintiff; and

    e.    That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would not provide Mr. Song with required tax forms,

18

documentation, and related information necessary for Mr. Song's tax returns.

71.    Defendants did not disclose these material facts or made the foregoing material omissions that Defendants knew Mr. Song would rely upon or by which Mr. Song would be deceived from not receiving in making the investment and wiring his $1 million to Defendants.

72.    Because of Defendants' material misrepresentations and omissions, Mr. Song, to his significant financial detriment, invested $1 million in Defendant UP Investor, wiring those monies to Defendant Up Development at Defendant J. Fish's direction, purportedly purchasing a 7% interest in Defendant UP Investor directly from Defendant Fish.

73.    As a result of Defendants' fraudulent and misleading conduct, Plaintiff was severely damaged in an amount of $1 million, plus interest, attorneys' fees and costs.

WHEREFORE, for the reasons set forth herein, Plaintiff Song seeks judgment against Defendants, jointly and severally, for violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2); the entry of an order granting rescission of his investment in the amount of $1 million, plus all applicable legal interest, costs; and such other and further relief this Court deems appropriate.

## COUNT II

### Florida Securities and Investor Protection Act ("FSIPA")
### (Rescission Pursuant to §517.211, Fla. Stat.)

**(All Defendants)**

74.    Plaintiff restates and reincorporates by reference the allegations of Paragraphs 1 through 63 as if fully set forth herein.

75.    Section 517.211, Florida Statutes, authorizes a private cause of action for violation of Florida's Securities Investor Projection Act ("FSIPSA").

76.    Sections 517.211(3) and (6), Fla. Stat., provide for the remedy of rescission, allowing a purchaser to recover the consideration paid for the security or investment, plus interest thereon at the legal rate from the date of sale, less the amount of any income received by the purchaser, and reasonable attorneys' fees.

77.    Section 517.211(2) imposes joint and several liability on any person purchasing or selling a security in violation of Fla. Stat. § 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase.

78.    Section 517.301, Fla. Stat., addresses the unlawful or fraudulent sale of ay investment or security in violation of Chapter 517.

79.    In connection with the sale of the investment at issue, Defendants individually and/or collectively, directly and/or indirectly, employed a device,

scheme, or artifice to defraud Mr. Song and engaged in transactions, practices, or course of business that operated as a fraud or deceit upon Plaintiff.

80.     Defendants obtained $1 million of Mr. Song's savings by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under where they were made, not misleading.

81.     Under the circumstances described in more detail above, Defendants had knowledge of and duty to disclose the following material facts in order to make their other statements not misleading, including but not limited to:

    a.  That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would not provide full and complete documentation to Plaintiff, whether called for by the Agreement or otherwise required by law;

    b.  That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would ignore Plaintiff's communications;

    c.  That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would fail to treat Mr. Song as a member of Up Investor;

    d.  That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would not share any profits with Plaintiff; and

    e.  That, after Mr. Song wired his $1 million as directed by Defendants, Defendants would not provide Mr. Song with required tax forms, documentation, and related information necessary for Mr. Song's tax returns.

82.    Defendants did not disclose these material facts or made the foregoing material omissions that Defendants knew Mr. Song would rely upon or by which Mr. Song would be deceived from not receiving in making the investment and wiring $1 million to Defendants.

83.    Defendants defrauded Mr. Song by engaging in the deceitful and fraudulent conduct set forth above through a device, scheme and artifice in violation of Florida statutes § 517.301.

84.    Each of Defendants' misrepresentations and/or omissions were false or were made with reckless or negligent disregard for the truth.

85.    Mr. Song relied to his detriment on Defendants' statements.

86.    Because of Defendants' material misrepresentations and omissions, Mr. Song, to his significant financial detriment, invested $1 million in Defendant UP Investor, wiring those monies to Defendant Up Development at Defendant J. Fish's direction, purportedly purchasing a 7% interest in Defendant UP Investor directly from Defendant Fish.

87.    As a result of Defendants' fraudulent, misleading, and/or negligent conduct, Plaintiff was severely damaged in an amount of $1 million, plus applicable legal interest, attorneys' fees and costs.

WHEREFORE, for the reasons set forth herein, Plaintiff Song seeks judgment against Defendants, jointly and severally, for violation of Section 517, *et*

*seq.* of Florida's Securities Investor Projection Act; the entry of an order granting rescission of his investment in the amount of $1 million, plus applicable legal interest, attorneys' fees and costs, pursuant to Section 517.211, Fla. Stat.; and such other and further relief this Court deems appropriate.

### COUNT III

### Civil Remedies for Criminal Practices
### (Civil Theft Pursuant to § 772.11, Fla. Stat.)

### (All Defendants)

88.    Plaintiff restates and reincorporates by reference the allegations of Paragraphs 1 through 63 as if fully set forth herein.

89.    In accordance with the requirements of Section 772.11, Florida Statutes, Mr. Song made written demand on Defendants for treble damages, based on Florida's Civil Theft law. A true and correct copy of the Civil Theft Demand Letter is attached hereto as **Exhibit 3**.

90.    As explained hereinabove, Defendants engaged in a sophisticated scheme of deceit and theft in which Defendant Fish, individually and in his role as Manager of Defendant Entities, and with the assistance of Defendant J. Fish and the Defendant Entities, knowingly took concerted steps to obtain Mr. Song's $1 million with felonious intent to permanently deprive Mr. Song of his money or any recognized membership interest and benefits in Defendants' purported investment.

91.     Section 772.103(1), Fla. Stat., expressly states is it unlawful for any person: "Who has with criminal intent received any proceeds derives, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise."

92.     Defendant Fish, in concert with his son, Defendant J. Fish, who directed Mr. Song to make the interstate wire transfers, and through the use of the alter-ego Defendant Entities, wooed Mr. Song into wiring $1 million to Defendant Up Development entity, to purportedly purchase a 7% interest in the Defendant Up Investment entity, which interest ostensibly had been owned by and was being assigned by Defendant Fish to Mr. Song.

93.     Once Defendants had possession and control of Mr. Song's $1,000,000.00, they repeatedly ignored Plaintiff attempts to speak with Defendant Fish, and ignored Mr. Song's written demand for the return of his money.

94.     Defendants failed to provide promised updates to Mr. Song, failed to provide corporate information and documentation, and ignored Mr. Song's requests and inquiries regarding same.

95.    Defendants similarly ignored Mr. Song and did not recognize him as an actual member or owner, as evidenced by their failure to deliver required tax reporting information for the years 2021 and 2022, or any other time.

96.    Defendants damaged Mr. Song in the amount of $1 million since wiring the funds in June of 2021, plus the interest that Mr. Song could have earned on those monies during the time it was possessed and not returned by Defendants.

97.    Defendants' actions and inactions left Mr. Song with no choice but to retain undersigned counsel and incur legal expenses associated with investigating Defendants' actions and inactions, forcing Defendants to acknowledge Mr. Song, and to recover Mr. Song's illegally taken funds.

WHEREFORE, for the reasons set forth herein, Plaintiff Song seeks judgment against Defendants, jointly and severally; the entry of an order finding that, with criminal intent, Defendants deceptively and deceitfully acquired $1,000,000 from Plaintiff, and requiring Defendant to pay Plaintiff threefold the actual damages sustained, plus any attorneys' fees and costs, pursuant to statute; and such other and further relief this Court deems appropriate.

Respectfully submitted this 21st day of June, 2023.

/s/  Joseph A. Sacher
**Joseph A. Sacher, Esq.**
Florida Bar No. 174920
**Richard J. Anderson, II, Esq.**
Florida Bar No. 1024861
**GORDON REES SCULLY MANSUKHANI**
100 S Ashley Drive, Suite 1290
Tampa, Florida 33602-5309
Telephone:  (305) 428-5339
Email: jsacher@grsm.com
Email: randerson@grsm.com
Email: aruff@grsm.com